Kestenman Bros. Mfg. Co. *vs.* Lillian Greene.

FEBRUARY 5, 1954.

Present: Flynn, C. J., Baker, Condon and O'Connell, JJ.

CONDON, J. This is an employer's petition to review a preliminary agreement for workmen's compensation for total incapacity on the ground that such incapacity has ended or diminished. From a decree finding the respondent employee no longer incapacitated by the injury described in the agreement and ordering compensation suspended, respondent has appealed to this court.

In support of her appeal she has set out six reasons, but in reality they amount only to the contentions that there is no legal evidence to support the finding in the decree and that the decree is otherwise contrary to law. She has also argued, in effect, that the decree is not supported by the weight of the evidence. That argument will not be treated here since it is well established that in a workmen's compen-

sation case this court does not weigh the evidence. The basic question raised by her appeal is whether the evidence shows that she is no longer incapacitated by the specific injury described in the agreement.

According to the agreement, the nature and location of her injury is described as "Ganglion right wrist" and it is further stated therein that it was caused while respondent was "Twisting bracelet parts" in the course of her employment in petitioner's jewelry shop on September 13, 1950. She continued working until September 22, 1950 when the plant physician Dr. I. Kapnick sent her to the Miriam Hospital in Providence where he operated on her wrist and removed the ganglion. On the instructions of Dr. Kapnick she returned to work on Monday, September 25, 1950, but her hand was swollen, bandaged and in a sling. The employer found that she could not do her regular work in that condition and since there was no light work in the shop that she could do, it was agreed that she was totally incapacitated as of that date. She remained out of work until January 8, 1951, drawing total compensation in accordance with the preliminary agreement dated October 4, 1950 and approved November 6, 1950.

On January 18, 1951 she signed a settlement receipt acknowledging that petitioner had paid her compensation in full to January 5, 1951 and that she was able to return to work. However, she did not return to her employment at petitioner's shop as there was no work she could do there at that time. Instead she got a job for two weeks at the Bulova Watch Company and for the next two weeks at the Brier Manufacturing Company. In neither place was she able to do the work assigned to her on account of the painful condition of her right hand. Accordingly on February 15, 1951 petitioner entered into another agreement, identical in terms with the original agreement, to pay her compensation for total incapacity.

It is this second agreement which the petitioner seeks to

have reviewed. In its petition it has alleged that the agreement was approved March 12, 1951, and this allegation is followed by the usual allegations that employee's incapacity thereunder has ended or diminished and that, although able to do so, she has not returned to work. The respondent contends that such petition was clearly insufficient because it did not allege with more particularity the grounds upon which the claim that her incapacity had ended or diminished was based. She claims that since the petition lacked such allegation it did not afford her adequate and proper notice of the case she had to defend. In connection with such claim she also contends that the preliminary agreement of March 12, 1951 did not properly describe the injury which was then incapacitating her, because the description therein was "Ganglion right wrist" notwithstanding the fact that the ganglion had been excised by Dr. Kapnick on September 22, 1950.

These two contentions are without merit. In our opinion the petition is sufficient to afford respondent ample notice of the claim she had to defend. Moreover it is the usual form of petition which, as far as we are aware, has never before been questioned as lacking in sufficient averments. In keeping with the expressed policy of the workmen's compensation act, general laws 1938, chapter 300, article III, §14, which favors informality in the pleading and procedure thereunder, this court is disposed to look with reasonable liberality upon the sufficiency of a pleading when questions pertaining to it are raised here. *Jules Desurmont Worsted Co. v. Julian,* 56 R. I. 97. In any event it is too late to raise such a question in this court for the first time.

The other contention of respondent appears to be rather strained. We construe the second agreement of March 12, 1951 to be no more than a formal reinstatement of the original agreement of October 4, 1950. Consequently her injury was quite properly described therein precisely as it was described in the original agreement. The second agree-

ment was in effect merely a restoration of respondent's right to compensation for total incapacity under the original agreement after she had tried to work and found that she was unable to do so. Therefore the second agreement was in no sense an independent agreement based on a different injury from that described in the original agreement.

With these preliminary questions of procedure out of the way there remains only one question to be decided. Is respondent still incapacitated in whole or in part by the injury described in the agreement, namely, "Ganglion right wrist"? At the hearing before the trial justice originally on May 26, 1952 there was a substantial conflict in the medical evidence as to whether respondent was presently incapacitated by the aftereffects of the removal of the ganglion or from some other independent cause. She had been treated or examined by several doctors after Dr. Kapnick had operated on her wrist and excised the ganglion. None of those doctors testified, but their reports of either treatment or examination were offered in evidence, some of them by petitioner and others by respondent.

Apparently at the conclusion of the hearing and before he had an opportunity to read the reports, the trial justice was concerned about respondent's welfare and suggested that she be examined by Dr. Wilfred Pickles, a neurologist, since at least one of the doctors who had examined her had recommended that she be examined by such a specialist. There being no objection to this suggestion, the trial justice appointed Dr. Pickles as an impartial examiner and continued the hearing until such an examination was completed and a report thereof received. Upon receipt of such report the hearing was reopened on December 10, 1952, and at that time counsel for respondent moved that Dr. Pickles be summoned so that he might examine the doctor on the contents of his report. The hearing was again continued until December 18, 1952 at which time Dr. Pickles appeared and was examined at length by counsel for respondent.

Doctor Pickles and respondent were the only witnesses at the hearing. The reports of the other doctors who examined or treated her are in evidence as exhibits. Apparently the trial justice rejected the opinions of the other doctors as to the nature of respondent's incapacitating condition. He relied entirely upon Dr. Pickles who in the report of his examination of respondent stated: "In my judgment this patient is suffering from a radio-humeral bursitis on the right side. This condition not infrequently follows the performance of persistent twisting motions such as those described by the patient, incidental to her occupation prior to the onset of her disability." He reiterated that opinion and stoutly adhered to it throughout a long and persistent cross-examination by respondent's counsel who sought to have him concede that her painful condition had its origin in or about the scar remaining from the operation.

It is clear from Dr. Pickles' report and testimony that respondent is not incapacitated by any residual effects of that operation. In his report he states that she has "a fine well-healed scar at the site of operation with no thickening and no evidence of involvement of tendons or nerves at the site of operation." He testified that there was "no particular tenderness on palpation of the scar"; that respondent "didn't react as if it was tender to any significant degree"; and further, that it "didn't seem to me she was any more tender there than anywhere else." Counsel also tried, but without success, to obtain from Dr. Pickles an admission that respondent's pain could be due to the radial nerve coming up through the fingers and through the wrist. The doctor's response was an emphatic "No." "Not at all."

Doctor Hannibal Hamlin, a neurosurgeon, who examined respondent on March 24, 1952 reported a different condition at that time. He expressed the opinion that she had "developed a tenosynovitis involving extensor tendons of 2nd and 3rd fingers of right hand associated with occupational activity during September, 1950 as noted in history. Adhesions of

synovial sheaths have developed adjacent to dorsal carpal ligament causing pain on wrist flexion and ulnar deviation, producing chronic dystrophy." His opinion is clearly different from that of Dr. Pickles, but on this appeal we cannot be concerned with the extent of such difference or the relative correctness of either. Nor are we concerned with the opinions in the other reports or with the weight of the testimony of the respondent herself to the effect that the painful condition of her hand and forearm centers and has its origin in the scar on her wrist.

In the limited province within which this court functions on an appeal in a workmen's compensation case it is of no moment that there may be in the record other and stronger evidence in favor of respondent than that on which the trial justice relied in deciding against her. The only question for us to determine is whether such contrary evidence was legal evidence. In the instant case we have no doubt on that score. Clearly there is such evidence here from which the trial justice could find as he did that respondent was no longer incapacitated by reason of the injury described in the agreement.

The respondent, however, contends further that on all the evidence this case should not have been decided strictly in accordance with the rule laid down in *Peters* v. *Monowatt Electric Corp.,* 78 R. I. 134. We fail to note any good reason for such contention. Certainly, on the record here, to allow compensation to continue would be to make an arbitrary exception to that rule. Since there was evidence which convinced the trial justice that respondent was suffering from a new and different physical injury from the one described in the agreement and which was not caused by or did not flow from such injury, he was bound to apply the rule of the *Peters* case.

The respondent makes a further contention that if Dr. Pickles' opinion is correct then there was an erroneous diagnosis of her injury made by petitioner's plant physician,

and therefore if this court does not reverse the superior court's decree she will be the victim of a grave injustice. This is not true, since under the workmen's compensation act she has the right to petition for a review of the agreement on the ground of an incorrect diagnosis. G. L. 1938, chap. 300, art. III, §1, as amended by public laws 1949, chap. 2272. But she has no right to have such a claim considered in a hearing on a petition for review brought by her employer solely on the ground that the particular injury described in the agreement no longer incapacitates her. And *a fortiori* this court cannot, on her appeal from the decree below, consider any reason for its reversal based on that ground.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Worrell & Hodge, Lee A. Worrell,* for petitioner.

*William E. Walsh, Thomas F. Keefe, James H. Duffy,* for respondent.